## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| | **CASE NO. 23-cr-077-ABJ** |
| **v.** | |
| **KENNETH CHRISTIAN PAUL SCHULZ,** | |
| **Defendant.** | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Defendant Kenneth Christian Paul Schulz to 90 days of incarceration, 60 hours of community service, $500 in restitution, and a $10 special assessment.[1]

### I.      Introduction

Defendant Kenneth Schulz, a 32-year-old software analyst, participated in the January 6, 2021, attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.[2]

---

[1] As a result of the D.C. Circuit's decision in *United States v. Little*, 22-3018 (Aug. 18, 2023), the government is not permitted to ask for a split-sentence as we previously have, and requested a longer term of probation. We are currently evaluating our options, and the implications of Little. But given the timing of this sentencing, we believe our allocution is just and appropriate

[2] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The

Defendant Schulz pleaded guilty to one count of violating 40 U.S.C. § 5104(2)(2)(G).  As explained herein, a sentence of one month of incarceration is appropriate in this case because Schulz: (1) watched rioters smash the windows near the Senate Wing Doors and quickly followed them into building, becoming the 26th rioter to enter the Capitol only 34 seconds after the initial breach; (2) took photos inside the Capitol, posted them to Facebook, later deleted them from Facebook, and then lied to the FBI about having taken them; (3) was part of a group of rioters that chased USCP Officer Eugene Goodman up a flight of stairs; (4) despite pleading guilty, Schulz continues to actively spread false information about January 6th and the 2020 Presidential Election on multiple social media platforms; and (5) bragged to others about being first person to enter the Capitol and has shown no remorse for his criminal actions.

The Court must also consider that Schulz's conduct on January 6, like the conduct of hundreds of other rioters, took place in the context of a large and violent riot that relied on numbers to overwhelm police officers who were trying to prevent a breach of the Capitol Building, and disrupt the proceedings. Here, the facts and circumstances of Schulz's crime support a sentence of 90 days of imprisonment.

## II.      Factual and Procedural Background

### *The January 6, 2021, Attack on the Capitol*

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF 20 (Statement of Offense), at 1-5.

---

Metropolitan Police Department (MPD) also suffered losses as a result of January 6, 2021, and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9 million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

*Schulz's Role in the January 6, 2021, Attack on the Capitol*

When Schulz arrived on the Capitol grounds, he saw people engaged in physical and verbal confrontations with police. Schulz nevertheless pushed forward until he made his way to the scaffolding that had been erected for the Presidential Inauguration. Schulz started climbing the northwest stairs underneath the scaffolding, the cover of which had been cut away by other rioters. A short way up the steps, Schulz paused, turned around to face the crowd behind him, and pumped his fist in the air in celebration and to encourage other rioters to follow. (Figure 1.)



*Figure 1: Schulz encouraging other rioters from below the scaffolding.*

After reaching the top of the stairs, Schulz quickly made his way to the Senate Wing Doors. Schulz watched as other rioters smashed open the windows with their fists, stole police shields, flags, and pieces of lumber. (Figure 2.)



*Figure 2: Schulz standing directly behind a rioter using a stolen police shield to break a window (arrow indicates the police shield)*

Schulz took a photo of a shattered window and posted it to Facebook with the caption, "TAKE THE CAPITOL".  (Figure 3.)  Schulz later deleted this photo from Facebook.



*Figure 3: Screenshot of Facebook post by Schulz*

4

Approximately 34 seconds after the first rioter entered the Capitol through one of the broken windows, Schulz entered through the door, which had been kicked open from the inside by other rioters.  Immediately upon entering, Schulz used his cellphone to take pictures and/or video. (Figure 4.)



*Figure 4:  CCTV of interior of Senate Wing Doors at approximately 2:13 p.m.; Schulz was one of the first rioters to enter the Capitol and immediately used his phone to record events.*

Schulz posted one of these pictures to Facebook with the caption, "STORMING THE CAPITOL."  (Figure 5.)  Schulz later deleted this photo from Facebook and told the FBI that he did not take any pictures or post on any social media accounts while he was in the building.



*Figure 5: Screenshot of Facebook post by Schulz*

Schulz continued with or just behind the group of rioters that followed USCP Officer Eugene Goodman up a set of stairs to the Ohio Clock Corridor.  (Figures 6-7.)





*Figures 6-7: Schulz joined other rioters who chased Officer Goodman up a flight of stairs.*

Schulz left the Capitol through the through the Senate Carriage Door at 2:19 p.m., approximately six minutes after he entered.

After leaving the Capitol, Schulz remained in the crowd on the Capitol grounds and told others (falsely) that he was the first person to enter the Capitol building.  One such individual, pictured below, informed the FBI through counsel, that he met Schulz on the afternoon of January 6 and that Schulz told him that he was the first person to storm the capitol.  The individual took a "selfie" picture with Schulz, who was holding up one finger to indicate "number one" and posted it to Twitter with a caption referring to Schulz as the "First guy to storm the capital (sic) today." (Figure 8.)



*Figure 8:  Schulz took pride in telling others he was the first rioter to storm the U.S. Capitol.*

On January 6, Schulz also posted a selfie picture outside the Capitol captioned, "THIS IS OUR HOUSE" and a picture of the Rotunda Doors on the east side of the Capitol captioned, "LET US IN THIS IS OUR HOUSE."  (Figures 9 and 10).   Schulz later deleted both photos from Facebook.





*Figures 9-10: Schulz's Facebook posts celebrated his actions on January 6*

*Defendant's Interview*

Schulz participated in a voluntary interview with FBI Task Force Officers on March 29, 2021.  Schulz informed the interviewing officers that he traveled alone to Washington, D.C. on January 4, 2021, and that he stayed in a local hotel.  Schulz reported that he was a supporter of then-President Trump, and that he went to Washington, D.C. and ultimately to the Capitol building to report on the events as a freelance reporter.[3]  Schulz explained that he ran a website where he regularly posted written and video recorded commentary about various topics.

Schulz stated that he noticed the crowd growing larger outside the Capitol building and observed others fighting with law enforcement and "acting crazy."  Schulz denied participating in any violent actions and denied assaulting any police officer.  Schulz claimed that he was pushed with a large crowd up against the scaffolding, where he observed additional fighting and verbal confrontations between rioters and the police.  Video footage from this time shows that, although there was pushing among the gathered crowd, people were able to, and did, retreat, and that no one pushed Schulz up the stairs and into the Capitol.

Schulz explained that he followed the crowd through a doorway into the Capitol.  He reiterated that he was there as a journalist and explained that he was inside for approximately five minutes.  Schulz stated that he did not take any pictures or post any pictures to his social media accounts while inside the Capitol.  As noted above, Schulz did take photos while inside the Capitol building.  It is unclear, however, whether he posted those pictures to his Facebook account while he was still inside the building or sometime after his exit.

---

[3] Schulz did not have permission enter the Capitol grounds or building as a member of the news media.  Moreover, Schulz's actions before, during, and after his time in the Capitol building belie his claim that he was there just to report on the events.

Schulz reported that, after he left the Capitol building, he walked around for approximately three hours talking with random people about their experiences at the Capitol that day.  Schulz left the area and went back to his hotel when he heard the message from then-President Trump asking people to leave.

*The Charges and Plea Agreement*

On February 27, 2023, the United States charged Schulz by criminal complaint with violating 18 U.S.C. § 1752(a)(1), 18 U.S.C. § 1752(a)(2), 40 U.S.C. § 5104(e)(2)(D), and 40 U.S.C. § 5104(e)(2)(G).  On March 10, 2023, the United States Attorney for the District of Columbia charged Schulz by Information with the same four counts.  On March 10, 2023, law enforcement officers arrested Schulz at his home in Florida.

On June 6, 2023, pursuant to a plea agreement, Schulz pleaded guilty to Count Four of the Information, charging him with a violation of 40 U.S.C. § 5104(e)(2)(G).  By plea agreement, Schulz agreed to pay $500 in restitution to the Architect of the Capitol.

## III.    Statutory Penalties

Schulz now faces a sentencing on a single count of violating 40 U.S.C. § 5104(e)(2)(G). As noted by the plea agreement and the U.S. Probation Office, the defendant faces up to six months of imprisonment and a fine of up to $5,000. The defendant must also pay restitution under the terms of his plea agreement.  *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).  As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply to it. 18 U.S.C. § 3559; USSG §1B1.9.

## IV.    Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. In this case, as described below, the

Section 3553(a) factors weigh in favor of 90 days of incarceration and 60 hours of community service.

### A.  The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6 posed "a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021). While assessing Schulz's participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors. Notably, for a misdemeanor defendant like Schulz, the absence of violent or destructive acts is not a mitigating factor. Had Schulz engaged in such conduct, he would have faced additional criminal charges.

Two of the most important factors in Schulz's case are: (1) Schulz's participation on the front lines of the initial incursion into the Capitol as the 26th person to enter the building, a mere 34 seconds after the initial breach, and (2) Schulz's actions in deleting his braggadocios social media posts from the Capitol and falsely telling the FBI that he had not taken any such photos in the building.

Accordingly, the nature and the circumstances of this offense establish the clear need for a sentence of one month incarceration in this matter.

### B.  The History and Characteristics of Schulz

As set forth in the PSR, in October 2016, Schulz was sentenced to a 12-month term of probation following a conviction for Criminal Damage to Property – Not Exceeding $300, a Class A Misdemeanor in Dupage County Circuit Court in Wheaton Illinois for damaging the victim's iPhone.  While this conviction may seem relatively minor, it is important to note that the defendant

was also ordered to $427 in court costs and fees and to perform 30 hours of community service. Schulz's actions in this case, although also constituting a misdemeanor violation, are much more serious than damaging an iPhone.

Although Schulz reported some struggles during his upbringing, nothing about his struggles in youth or adolescence or his family situation warrant leniency in this case.

### C.  The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Joshua Bustle and Jessica Bustle*, 21-cr-238-TFH, Tr. 08/24/21 at 3 ("As to probation, I don't think anyone should start off in these cases with any presumption of probation. I think the presumption should be that these offenses were an attack on our democracy and that jail time is usually -- should be expected") (statement of Judge Hogan).

### D.  The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be

deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

A sentence of 90 days of incarceration is appropriate to specifically deter Schulz from future criminal actions. Schulz continues to promote false information related to the 2020 Presidential Election, has echoed calls to "free" individuals convicted of January 6 related crimes and shows little remorse for his actions. For example:

- On August 19, 2023, Schulz posted on social media that he did not believe "one bit" that the former President lost the state of Georgia in the 2020 election:



- On August 3, 2023, Schulz posted to social media minimizing his criminal actions by suggesting that those charged with crimes related to January 6, including the former President, did nothing more than "question our election's integrity."



14

- Despite the fact that Schulz had been illegally inside the Ohio Clock Corridor alongside Jacob Chansley, on March 9, 2023, following the public release of USCP CCTV footage by a national media figure, Schulz posted, "Free Jacob Chansley QAnon Shaman!"



While Schulz is entitled to express his political opinions, these social media posts demonstrate his continued susceptibility to believe in falsehoods and his lack of remorse. If not specifically deterred, Schulz would likely participate in a future January 6-like event should his preferred candidate put out a call for action.

### E. The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers, to conspiracy to corruptly interfere with Congress.[4] This Court must sentence Schulz based on his own conduct and relevant characteristics, but should give substantial weight to the context of his unlawful conduct: his participation in the January 6 riot.

Schulz has pleaded guilty to Count Four of the Information charging him with Parading, Demonstrating, or Picketing in a Capitol Building in violation of 40 U.S.C. § 5104(2)(2)(G). This offense is a Class B misdemeanor. 18 U.S.C. § 3559. Certain Class B and C misdemeanors and

---

[4] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing Guidelines do not apply, USSG § 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), do apply, however.

Section 3553(a)(6) of Title 18 directs a sentencing court to "consider … the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Section 3553(a)(6) does not limit the sentencing court's broad discretion under 18 U.S.C. § 3553(a) "to impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." 18 U.S.C. § 3553(a). Although unwarranted disparities may "result when the court relies on things like alienage, race, and sex to differentiate sentence terms," a sentencing disparity between defendants whose differences arise from "legitimate considerations" such as a "difference[] in types of charges" is not unwarranted. *United States v. Bridgewater*, 950 F.3d 928, 936 (7th Cir. 2020).

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences. While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the sentences in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

(1)     In *United States v. Anna Morgan-Lloyd*, 21-CR-00164, Judge Lamberth sentenced the defendant to 90 days of incarceration for violating 40 U.S.C. § 5104(e)(2)(G). Morgan-Lloyd was one of the first 50 people to enter the Capitol through the Senate Wing Doors and stayed in the building for approximately 5 minutes. Morgan-Lloyd took photos and video inside the building. However, unlike Schulz who deleted his photos and videos from Facebook, Morgan-Lloyd allowed the FBI to search her phone.

16

(2)     In *United States v. Jeffrey Finley*, 21-CR-00526, Judge Chutkun sentenced the defendant to 75 days of incarceration for violating 18 U.S.C. § 1752(a)(1).  Finley and Schulz were both among part of initial waves of rioters:  with Finely forming part of the first group of rioters who made their way onto the restricted grounds at 12:52 p.m., and Schulz forming part of the first wave of rioters who made there way into the Capitol building at 2:13 p.m.  Both Finley and Schulz observed police trying to repel rioters with pepper spray and other saw people fighting with the police, but nevertheless continued on and entered the Capitol building.  Finley and Schulz both posted photos and videos of themselves at the Capitol and later deleted them from social media, which impeded the government's investigation.  As here, the government recommended that Finley be sentenced to 90 days of incarceration.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

## V.     Restitution

Pursuant to 18 U.S.C. § 3663(a)(3) a court "may order restitution in any criminal case to the extent agreed to by the parties in a plea agreement."  Here, the parties agreed that Schulz must pay $500 in restitution, which reflects in part the role Schulz played in the riot on January 6.  Plea Agreement at 6, § 11. As the plea agreement reflects, the riot at the United States Capitol had caused "approximately $2,881,360.20 in damages, a figure based on loss estimates supplied by the

Architect of the Capitol and other governmental agencies as of October 14, 2022. *Id.* (As noted above in footnote 1, the amount of damages has since been updated by the Architect of the Capitol, USCP, and MPD.) Schulz's restitution payment must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities. *See* PSR ¶ 78.

VI.    **Conclusion**

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence Schulz to 90 days of incarceration, 60 hours of community service, and $500 in restitution. Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on his liberty as a consequence of his behavior, while recognizing his acceptance of responsibility for his crime.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:    */s/ Douglas B. Brasher*
DOUGLAS B. BRASHER
Assistant United States Attorney
Texas State Bar No. 24077601
Federal Major Crimes – Detailee
1100 Commerce Street, Third Floor
Dallas, Texas 75242
Telephone:  214-659-8604
douglas.brasher@usdoj.gov